NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12286

JOSH J., a juvenile vs.  COMMONWEALTH.


Suffolk.     October 5, 2017. - January 31, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Bail.  Delinquent Child.  Due Process of Law, Pretrial
detainees.  Moot Question.



Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on January 11, 2017.

The case was reported by Lowy, J.


Eliza Lockhart-Jenks, Committee for Public Counsel
Services, for the juvenile.
Marina Moriarty, Assistant District Attorney, for the
Commonwealth.


LOWY, J.  This case, here on a reservation and report by a

single justice of the county court in response to the juvenile's

petition under G. L. c. 211, § 3, requires us to consider the

proper application of G. L. c. 276, § 58, and G. L. c. 276,

§ 58B, specifically with regard to the number of days an

individual may be held without bail after a bail revocation hearing. We conclude that where an individual has been released on bail pursuant to G. L. c. 276, § 58, and there is probable cause to believe the individual committed a crime while released on bail, the Commonwealth may seek to revoke bail under either § 58 or § 58B. The judge must then determine whether the Commonwealth satisfied the requirements of the particular statute, either § 58 or § 58B, under which it sought to revoke bail.

1. Background and prior proceedings. On May 6, 2016, a delinquency complaint issued charging the juvenile with breaking and entering in the daytime with intent to commit a felony and larceny over $250. A judge in the Juvenile Court set the juvenile's bail at $1,000. The judge also advised the juvenile, pursuant to G. L. c. 276, § 58, that the juvenile's bail could be revoked if he committed a new crime while on release. The juvenile posted bail and was released.

In August, 2016, two delinquency complaints issued against the juvenile for several new crimes he allegedly committed while on release on the pending charges, including two counts of assault and battery on a pregnant victim and one count of malicious destruction of property valued over $250. In November, 2016, based on the new charges, the Commonwealth sought to revoke the juvenile's bail pursuant to G. L. c. 276,

§ 58.  A Juvenile Court judge allowed the Commonwealth's motion, revoked the juvenile's bail, and set a date for a bail review hearing on January 30, 2017, which amounted to a ninety-day bail revocation.[1]

By January 10, 2017, the charges stemming from the juvenile's conduct while he was released on bail had been resolved.[2]  The juvenile continued to be held on the original charges, however, so he moved to vacate the bail revocation order, but the judge who had revoked bail denied that motion. In response, the juvenile filed an emergency petition with this court pursuant to G. L. c. 211, § 3.  After a hearing, the single justice issued an interim order, noting that the issue raised by the juvenile in the petition, which he now presses before the full court, was not raised in the trial court, and concluding that the Juvenile Court judge did not abuse his discretion in refusing to vacate the bail revocation order in these circumstances.  One day later, there was a disposition in the underlying delinquency complaint.  The single justice subsequently reserved and reported the matter raised in the

---

[1] The Juvenile Court judge allowed the Commonwealth's motion to revoke bail in a margin endorsement which did not cite G. L. c. 276, § 58, or G. L. c. 276, § 58B, or otherwise reference a ninety-day revocation period.

[2] Ultimately, the juvenile was adjudicated delinquent on one count of assault and battery on a pregnant victim.  The juvenile received a suspended sentence and was placed on probation until his eighteenth birthday.

juvenile's petition to the full court, in order to give the court an opportunity to address the proper application of G. L. c. 276, §§ 58 and 58B,

2. <u>Discussion</u>. Although this case is moot, we address the issues raised because, as the single justice noted, they are "fully briefed and raise matters of importance that are likely to arise again, but are unlikely to be capable of appellate review in the normal course before they become moot." <u>Delaney</u> v. <u>Commonwealth</u>, 415 Mass. 490, 492 (1993), quoting <u>Upton,</u> <u>petitioner</u>, 387 Mass. 359, 365 (1982).

<u>Bail revocation under §§ 58 and 58B</u>. The juvenile claims that the judge erred in applying the ninety-day revocation period under G. L. c. 276, § 58B, as opposed to the sixty-day revocation period under G. L. c. 276, § 58, after finding probable cause to believe that the juvenile had committed a crime while released on bail under § 58. The crux of the juvenile's argument is that because bail can be revoked under either § 58 or § 58B, where an individual commits a crime while on release, the statutes create an ambiguous bail revocation framework, and therefore, the rule of lenity requires the application of the sixty-day revocation period under § 58. To resolve this issue, we begin with the pertinent portions of § 58 and § 58B. General Laws c. 276, § 58, sixth par., provides in pertinent part:

"If a person is on release pending the adjudication of a prior charge, and the court . . . finds probable cause to believe that the person has committed a crime during said period of release, the court shall then determine, in the exercise of its discretion, whether the release of said person will seriously endanger any person or the community. . . . If the court determines that the release of said person will seriously endanger any person or the community and that the detention of the person is necessary to reasonably assure the safety of any person or the community, the court may revoke bail on the prior charge and may order said person held without bail pending the adjudication of said prior charge, for a period not to exceed sixty days."

The relevant portion of G. L. c. 276, § 58B, provides:

"A person who has been released after a hearing pursuant to [§ 58]. . . shall be subject to a revocation of release and an order of detention . . . [if] the judicial officer finds (1) that there is probable cause to believe that the person has committed a [F]ederal or [S]tate crime while on release, . . . and (2) the judicial officer finds that there are no conditions of release that will reasonably assure the person will not pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release."

". . .

"A person detained under this subsection . . . shall not be detained for a period exceeding ninety days excluding any period of delay as defined in [Mass. R. Crim. P. 36 (b) (2), 378 Mass. 909 (1978)]."

To determine the proper application of §§ 58 and 58B, we apply the well-established principles of statutory construction. Our fundamental aim is to "discern and effectuate the intent of

the Legislature." Commonwealth v. Morgan, 476 Mass. 768, 777 (2017). To that end, "[t]he language of the statute is the primary source of insight into the intent of the Legislature." Commonwealth v. Millican, 449 Mass. 298, 300 (2007). Therefore, where the statute is clear and unambiguous, our inquiry into the Legislature's intent need go no further than the statute's plain and ordinary meaning. See Falmouth v. Civil Serv. Comm'n, 447 Mass. 814, 818 (2006); Shamban v. Masidlover, 429 Mass. 50, 54 (1999) ("we are constrained to follow statutory language when it is plain and unambiguous, unless to do so would lead to an absurd result, or be contrary to the Legislature's manifest intention"). We also are mindful that where "two or more statutes relate to the same subject matter, 'they should be construed together so as to constitute a harmonious whole,' creat[ing] a consistent body of law, and giv[ing] full effect to the expressed intent of the Legislature." Paquette v. Commonwealth, 440 Mass. 121, 130 (2003), cert. denied, 540 U.S. 1150 (2004), quoting Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514 (1975).

The plain language of G. L. c. 276, §§ 58 and 58B, is clear and unambiguous, particularly where § 58B explicitly includes persons released on bail under § 58; an individual who is released on bail pursuant to § 58 may have his or her bail revoked under either § 58 or § 58B where, among other

requirements, there is probable cause to believe the individual committed a crime while on release. The Legislature's decision to provide two bail revocation mechanisms in these circumstances does not create ambiguity. Paquette, 440 Mass. at 130 ("The Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one"). The Commonwealth's discretion to seek to revoke bail under either § 58 or § 58B does not equate to an ambiguous or otherwise impermissible bail revocation scheme. Cf. Commonwealth v. Ehiabhi, 478 Mass. 154, 159 (2017) (although two statutes criminalizing identical conduct "create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments" [citation omitted]). Furthermore, although the Commonwealth may move to revoke under either § 58 or § 58B where an individual commits a crime while on release, it nonetheless must satisfy the distinct requirements of the statute upon which its motion is based. Compare G. L. c. 276, § 58 (revocation only where continued release "will seriously endanger any person or the community"), with G. L. c. 276, § 58B (revocation only where "there are no conditions of release that will reasonably assure the person will not pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions

of release").  The Legislature is free to amend these statutes to provide a single means of revocation where an individual commits an offense while released on bail pursuant to § 58; however, the bail revocation scheme is not ambiguous in its current form, and therefore, the rule of lenity does not apply.[3]

b.  Due process.  The juvenile also claims that revoking bail under § 58B where an individual has been released on bail pursuant to § 58, and subsequently commits a crime while on release, violates due process.[4]  Because pretrial detention encroaches on a fundamental liberty interest, we consider both substantive and procedural due process.  See Paquette, 440 Mass. at 124, 131.

---

[3] We note that although §§ 58 and 58B are not ambiguous, the existing bail revocation scheme, as it applies to individuals released on bail under § 58, can lead to incongruous results. For example, an individual who has been released on bail in Superior Court pursuant to G. L. c. 276, § 57, for a serious crime may have his or her bail revoked for sixty days under § 58 if he or she commits another serious crime while on release.  In contrast, if an individual commits a less serious crime and is released by a District Court judge on bail with conditions of release pursuant to § 58, and that person violates a condition of release that does not amount to a crime, the only available revocation mechanism is § 58B, which results in a revocation period not to exceed ninety days, excluding any period of delay as defined by Mass. R. Crim. P. 36 (b) (2), 378 Mass. 909 (1979).

[4] Based on the facts in the record and the issue that was reserved and reported, we narrow our focus to determine whether revocation under § 58B satisfies due process requirements only where an individual is released on bail under § 58.

i.  Substantive due process.  "'"[S]ubstantive due process" prevents the government from engaging in conduct that "shocks the conscience," Rochin v. California, 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325-326 (1937).' United States v. Salerno, 481 U.S. 739, 746 (1987)." Commonwealth v. Knapp, 441 Mass. 157, 164 (2004), quoting Aime v. Commonwealth, 414 Mass. 667, 673 (1993).  Where, as here, the statute imposes a restriction on a fundamental right -- freedom from physical restraint -- the statute "will be upheld only if it is 'narrowly tailored to further a legitimate and compelling governmental interest.'"  Paquette, 440 Mass. at 125, quoting Aime, supra.  It is well established that the State "may impose a regulatory restraint on the individual in narrowly-circumscribed situations."  Aime, 414 Mass. at 677-678.  See Salerno, 481 U.S. at 749 ("government's interest in preventing crime by arrestees is both legitimate and compelling").

We held in Paquette, 440 Mass. at 131, that the bail revocation provision contained in § 58 survived due process scrutiny because it "is narrowly tailored to further the Commonwealth's legitimate and compelling interests in assuring compliance with its laws, and in preserving the integrity of the judicial process by exacting obedience to its lawful orders."  Similarly, the bail revocation procedure contained in § 58B is

narrowly tailored to further the purpose of ensuring that an individual who is released on bail pursuant to § 58 complies with the court's lawful orders, particularly that the individual refrain from committing a new crime while released on bail.  We further emphasized in Paquette that revoking bail does not violate substantive due process because "the liberty interest of a person admitted to bail is conditional; if the person violates the explicit condition of his release, then his liberty can be curtailed."  Id. at 126 ("the keys to continued freedom are left in the pocket of the accused" [citation omitted]).[5]  Accordingly, we are satisfied that the revocation provision of § 58B, as it applies to individuals who have been released on bail under § 58 and subsequently commit a crime, survives substantive due process scrutiny.

ii.  Procedural due process.  Even where government action survives substantive due process scrutiny, procedural due process protections require that the governmental action be implemented in a fair manner.  Paquette, 440 Mass. at 131, quoting Salerno, 481 U.S. at 746.  "The core of procedural due

---

[5] Moreover, we observed that a "defendant cannot be heard to complain that his constitutional right to liberty has been violated when continued freedom was entirely within his own control, and the deprivation thereof was an inevitable consequence of his alleged failure to conform his conduct to the laws of this Commonwealth and to the explicit condition of his earlier release."  Paquette v. Commonwealth, 440 Mass. 121, 129 (2003), cert. denied, 540 U.S. 1150 (2004).

process is the adequacy of the hearing provided before a deprivation of liberty or property occurs." Aime, 414 Mass. at 683. "In determining what process is due . . . this court 'must balance the interests of the individual affected, the risk of erroneous deprivation of those interests and the government's interest in the efficient and economic administration of its affairs.'" Paquette, supra at 131, quoting Commonwealth v. Barboza, 387 Mass. 105, 112, cert. denied, 459 U.S. 1020 (1982).

We conclude that G. L. c. 276, § 58B, contains adequate procedural safeguards to protect against erroneous deprivations of liberty that are sufficient to satisfy the requirements of procedural due process. A critical component of our holding in Paquette was that, prior to releasing a defendant on bail, § 58 requires that the judge explicitly advise the defendant that bail may be revoked if the defendant commits a new crime while on release. Paquette, 440 Mass. at 126, discussing G. L. c. 276, § 58, first par. This constitutionally significant prerelease protection is afforded to all defendants released on bail pursuant to § 58, regardless of whether bail is eventually revoked under § 58B.

The procedures applied where bail is revoked under § 58B are also constitutionally adequate. As relevant here, a court "shall" revoke bail under § 58B only after a hearing where the Commonwealth (and the defendant) present evidence, and two

requirements are satisfied.[6]  First, there must be "probable cause to believe that the person has committed a [F]ederal or [S]tate crime while on release."  G. L. c. 276, § 58B.  We hold, as we did in Paquette, that the probable cause standard for determining whether a defendant committed a crime while on release survives constitutional scrutiny in the context of a bail revocation hearing.  See Paquette, 440 Mass. at 131-132.

Second, "the judicial officer" has to "find[] that there are no conditions of release that will reasonably assure the person will not pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release."  G. L. c. 276, § 58B.  This is a significantly weightier showing to revoke bail than under § 58.  Section 58 requires a showing that the defendant "will seriously endanger any person or the community."  Revocation under § 58B requires not only a showing that the person will pose a danger to any other person or the community, but also "that there are no conditions of release

---

[6] Because G. L. c. 276, § 58B, relates to "[a] person who has been released after a hearing pursuant to section[] . . . 58," we interpret the procedural requirements of a revocation hearing under § 58B to be equivalent to those when the Commonwealth seeks to revoke bail for the commission of a subsequent offense while the person is on release pursuant to § 58.  See Jake J. v. Commonwealth, 433 Mass. 70, 79 (2000) ("requirements of § 58B for revoking bail appear no less rigorous than any other requirement that may have obtained in a bail revocation").

that will reasonably assure the person" will not pose such a danger.  Only after determining that there is no set of conditions that would allow the release of the individual under § 58B "shall" the judge revoke bail.  Id.[7]  The dual bail revocation mechanisms established by §§ 58 and 58B are constitutionally sufficient, in part, because the Commonwealth can move for a sixty-day revocation, with a reduced showing, under § 58, or for a ninety-day revocation, with a heightened showing -- providing greater procedural protections to prevent erroneous deprivations of liberty -- under § 58B.[8]  Additionally,

---

[7] The parties did not argue, and we do not decide, whether the rebuttable presumption in § 58B is constitutional in the context of a revocation under § 58B when bail was granted under § 58.  See G. L. c. 276, § 58B, second par. ("[i]f there is probable cause to believe that" defendant committed crime while on release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community").  We note, however, that the rebuttable presumption in § 58B may be difficult to reconcile with the presumption recognized in § 58 that an individual will be released on bail or personal recognizance.  Cf. Delaney v. Commonwealth, 415 Mass. 490, 495 (1993).

[8] We are cognizant that the potential deprivation of liberty implicated by a bail revocation under § 58 or § 58B can be substantial.  We held in Commonwealth v. Pagan, 445 Mass. 315, 322 (2005), that the revocation period under § 58 "shall be valid for a period of sixty days."  The ninety-day revocation period under § 58B, however, includes excusable delay under Mass. R. Crim. P. 36 (b) (2), which means that the period of pretrial detention can extend well beyond ninety days.  Even though the statutory scheme is clear that bail may be revoked in this circumstance under either § 58 or § 58B, the heightened "no conditions" analysis under § 58B provides the requisite

requiring that bail be revoked only after finding that there is no combination of conditions that would allow the defendant's release furthers the bail statute's purpose of "establish[ing] the right of the accused, in most circumstances, to be admitted to bail." Paquette, 440 Mass. at 126, quoting Commonwealth v. Finelli, 422 Mass. 860, 863 (1996).[9]  Consonant with our holding in Paquette, supra, the bail revocation inquiries under § 58B are left to the sound discretion of the judge, and they provide the necessary procedural protections to satisfy procedural due process.  Accordingly, the revocation procedure set forth in § 58B complies with both substantive and procedural due process in the context of a bail revocation hearing where an individual was released on bail pursuant to § 58 and where the Commonwealth seeks to revoke bail under § 58B because the defendant allegedly committed a crime while on release.[10]

---

procedural protections to support the longer period of revocation.

[9] "The principal legislative purpose of § 58 is 'to protect the rights of the defendant by establishing a presumption that he or she will be admitted to bail on personal recognizance without surety and by delineating carefully the circumstances under which bail may be denied.'"  Pagan, 445 Mass. at 319, quoting Delaney, 415 Mass. at 495.

[10] The juvenile's claim that the Juvenile Court judge erred in denying his motion to reconsider the bail revocation order exceeds the parameters of the issue before us, and thus we decline to address it.

Conclusion.  We conclude that where an individual has been released on bail pursuant to G. L. c. 276, § 58, and there is probable cause to believe the individual committed a crime while released on bail, a trial court judge may revoke bail under either § 58 or G. L. c. 276, § 58B, if the Commonwealth is able to make the requisite showing under the respective statute.

The matter is remanded to the single justice of the county court, where an order shall enter dismissing the petition as moot.

So ordered.