SULLIVAN vs. SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL INSTITUTION-SHIRLEY, 101 Mass. App. Ct. 766

 
 JOHN J. SULLIVAN vs. SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL INSTITUTION, SHIRLEY, & others. [Note 1]

101 Mass. App. Ct. 766
 March 15, 2022 - September 27, 2022

Court Below: Superior Court, Middlesex County
Present: Rubin, Kinder, & Ditkoff, JJ.

 

No. 19-P-1734.

Imprisonment, Grievances. Administrative Law, Prison disciplinary proceeding, Judicial review. Libel and Slander. Due Process of Law, Prison disciplinary proceedings. Constitutional Law, Equal protection of laws. Civil Rights, Supervisory liability. Declaratory Relief. Practice, Civil, Judgment on the pleadings.

Discussion of the availability of judicial review under G. L. c. 30A, § 14, despite the inapplicability of most administrative procedures under G. L. c. 30A, including those governing the conduct of adjudicatory proceedings, of a final decision with respect to a grievance against a prison outside the context of an inmate disciplinary hearing. [771-772]

Judgment improperly entered dismissing the plaintiff prison inmate's challenge to the denial of his grievance of his termination as a prison law clerk after a typewriter motor was stolen from the prison library, where the prison's institutional grievance coordinator neither interviewed the plaintiff nor collected the documents that the plaintiff mentioned in the grievance form in accordance with Department of Correction regulations; and where, given that the plaintiff might well have been reinstated to his library law clerk position without loss of pay or seniority had he been interviewed, had the documents been reviewed, and had the institutional grievance coordinator concluded that the plaintiff was not involved with the theft, the unlawful procedure may have prejudiced the plaintiff's substantial rights. [772-774]

Judgment properly entered dismissing the plaintiff prison inmate's challenge to the denial of his grievance arising from an eleven-day delay in mailing the plaintiff's complaint for judicial review challenging the denial of an underlying grievance, where, although defendant prison employees did not dispute that the delay was unreasonable, there was no need to resolve the question of timeliness given that the Superior Court and the parties treated the 

 Page 767 

plaintiff's complaint as timely filed on the day that it was deposited in the prison mail system; thus, the plaintiff failed to demonstrate that his substantial rights were prejudiced; moreover, the defendant superintendent of the prison functionally provided the plaintiff with his requested relief (assurance that the circumstances would not occur again). [774-775]

A Superior Court judge properly dismissed the plaintiff prison inmate's defamation claim alleging that the defendant deputy superintendent of the prison made an implicit false statement of fact asserting that the plaintiff had been involved in a theft from the prison library where he worked, where, although the plaintiff was not defamation-proof as a matter of law for purposes of a motion to dismiss, the defamation claim was barred by the conditional privilege, in that the defendant enjoyed a conditional privilege as a workplace investigator and as a public official, and even in the light most favorable to the plaintiff, the excessive disclosure of the accusation was the result of the plaintiff's actions and not of recklessness by the defendant, and the plaintiff alleged no facts that could support a finding of knowing falsehood or reckless disregard for truth or falsity. [775-779]

Judgment properly entered dismissing the plaintiff prison inmate's claims arising from his asserted statutory right to prison employment on the ground that the State in which he was convicted of murder prior to being incarcerated in Massachusetts provided such, and the New England Interstate Corrections Compact (compact) entitled him to any legal rights that he enjoyed in that State, where there was no claim that the plaintiff was entitled to any specific job under the compact, and the prison agreed to work with him to secure him alternate employment; accordingly, his procedural due process claim failed, as did his derivative common-law wrongful discharge claim. [779-780]

In a civil action arising from the plaintiff prison inmate's termination as a prison law clerk after a typewriter motor was stolen from the prison library, judgment properly entered dismissing his claims that lacked merit, where, even if his termination had been arbitrary, his equal protection claim would not have risen above the constitutional threshold [780]; where the plaintiff complained about the prison library staffing as an employee, rather than a citizen speaking on a matter of public concern, and thus his retaliation claim under the First Amendment to the United States Constitution failed [780-781]; where the plaintiff's substantive due process claim failed, given that he did not allege any government action that shocked the conscience or interfered with rights implicit in the concept of ordered liberty [781]; where the plaintiff's claim of denial of access to the courts failed, given that he did not allege that the deficiencies in his access to the courts hindered his efforts to present a nonfrivolous legal claim [781]; where the plaintiff's two claims of supervisory liability under 42 U.S.C. § 1983 failed, given that for a supervisor to be liable under § 1983 for the actions of a subordinate, the subordinate's conduct must have amounted to a § 1983 violation [781]; and finally, where, given that nothing in the record suggested that the prison disputed the entitlement of the plaintiff to a fair and impartial adjudication of his grievances in accordance with regulations, there was no actual controversy to support the entry of a declaratory judgment [781-782].

Civil action commenced in the Superior Court Department on March 1, 2018.

 Page 768 

 The case was heard by Christopher K. Barry-Smith, J., on motions for judgment on the pleadings.

John J. Sullivan, pro se.

Timothy M. Pomarole for the defendants.

 DITKOFF, J. The plaintiff, inmate John J. Sullivan, filed a complaint against five employees of the Massachusetts Correctional Institution at Shirley (MCI-Shirley or prison) seeking judicial review of the denial of two prison grievances and asserting additional legal claims, all arising out of the plaintiff's termination as a prison law clerk after a typewriter motor was stolen from the prison library. We conclude that the plaintiff's first grievance, challenging his termination, was improperly denied because the prison failed to follow its own regulatory procedures in investigating it, and that the error may have affected the result. We further conclude that the plaintiff's claim for defamation against a correction officer for implicitly calling him a thief in front of other correction officers and inmates was properly dismissed. Although the plaintiff, a convicted murderer, is not defamation-proof against accusations of theft, the correction officer had a conditional privilege to explain hiring and firing decisions which was not lost by the fact that the statement was incidentally overheard by others. Concluding that the plaintiff's other claims lack merit, we affirm in part and reverse in part.

 1. Background. [Note 2] a. Prison library job. The plaintiff has been an inmate since he was convicted in New Hampshire of two counts of murder for the shootings, while intoxicated, of a neighbor he once dated and her father. See State v. Sullivan, 131 N.H. 209, 210-212 (1988). For reasons that are not disclosed on this record, he was transferred to Massachusetts custody in April 1995 and was placed at MCI-Shirley in August 2012. Having obtained a college degree from Boston University while incarcerated, he was assigned to employment as a law clerk in the prison library in 2015. A law clerk's "duties include assisting inmates in locating books and materials, assisting in legal inquiries and documenting typewriter use." The library is located in the same building as the prison school.

 Over the course of his employment, the plaintiff repeatedly complained to his supervisors about under-staffing and under-supervision at the library. He complained that two library janitorial 

 Page 769 

positions and four law clerk positions were unfilled. He repeatedly reminded his supervisors that the law clerks were working seven days per week, sometimes taking multiple shifts in a single day, despite Department of Correction (DOC) policy that inmates should work no more than five days per week. Twice, he submitted a proposed work schedule where each law clerk would work six days per week if one additional law clerk was hired. Towards the end of October 2017, Deputy Superintendent for Programming Sheila Kelly told the plaintiff that "she was unhappy with the quantity of his written inquiries." 

 Somebody stole a typewriter motor from a typewriter in the prison library between November 1 and 2, 2017. The plaintiff did not work the afternoon or evening of November 1. He worked the morning shift on November 2. He reports that he began his shift by vacuuming the library as he had been instructed to do. Meanwhile, another library law clerk used a typewriter without signing it out. Among a law clerk's duties is to "[d]ocument[] typewriter use during Law Library calls." The plaintiff signed out two or three typewriters to inmates but not the one that ultimately was found to be missing its motor.

 The motor was discovered to be missing around 1 P.M. on November 2. Correction Officer Anthony Salerno investigated the matter and, on November 3, fired the plaintiff, another law clerk (who had worked a different shift), and five school workers. At no point has the plaintiff received a disciplinary report concerning the theft. The plaintiff wrote to the director of security and to Deputy Superintendent Kelly, asking to be reinstated.

 On November 7, the plaintiff approached Deputy Superintendent Kelly at "staff access hour" and asked why he had been terminated. In a loud and angry tone, in a room filled with inmates and prison employees, she said, "Things have gone missing from the Library." 

 That same day, the plaintiff filed an informal complaint about the firing and the Kelly accusation. On November 30, a correction officer ruled that the informal complaint had no merit because "[a] disciplinary report is not required to terminate an inmate from a work assignment."

 The plaintiff then filed a formal grievance, stating, "I believe I can document that I had no connection to [the typewriter in question] at any relevant time." The plaintiff requested that he be reinstated to his job as a law clerk with no loss of pay or seniority. The institutional grievance coordinator (IGC) denied the plaintiff's 

 Page 770 

grievance, stating, "a review of the circumstance [of the termination] in this case leads me to conclude [that] the [correction officer] exercised his discretion appropriately." The IGC never interviewed the plaintiff or collected the documents that the plaintiff had mentioned.

 The department grievance manager reviewed the grievance and stated, "Staff acted appropriately in removing several inmates from their work assignments after items were missing from the school building," in which the library is located. The plaintiff appealed. On January 24, 2018, the then superintendent of the prison, Raymond Marchilli, denied the appeal, stating, "The termination of this [inmate] from his job assign[ment] was within the discretion of the DOC staff involved. Staff acted appropriately in this case and are working with the inmate to secure him alternate employment." 

 b. Prison mailing. By February 15, 2018, the plaintiff had prepared a Superior Court complaint related to the termination and told the property lieutenant, Darel Oja, that it needed to be mailed "this week." A property officer accepted the letter the next day (Friday). The following Monday was the Washington's Day holiday. See G. L. c. 4, § 7, Eighteenth; G. L. c. 6, § 12T.

 On Wednesday, February 21, the postage cost was deducted from the plaintiff's account. On Tuesday, February 27, eleven days after the property officer accepted it, the plaintiff's letter was mailed. On March 1, the plaintiff filed an informal complaint, grieving that the letter was not mailed within twenty-four hours and requesting a letter stating that this would not happen again. A correction officer denied the informal complaint as untimely. The plaintiff filed a grievance, and an IGC denied the grievance as untimely. The new superintendent, Steven Kenneway, denied the plaintiff's appeal because the issue was untimely but wrote, "it should be noted that every effort is made to process the mail. It shall continue to be a priority for this facility." 

 c. Amended and supplemental complaint. The plaintiff's original complaint was received by the Superior Court on March 1, 2018, and he amended the complaint on May 8. The amended complaint sought judicial review of the denial of his grievance regarding his termination (count 1). The plaintiff also raised a host of other counts arising out of the termination. The most notable, for our purposes, is a claim of defamation against Deputy Superintendent Kelly for essentially accusing him of theft (count 8). The plaintiff also raised claims of an equal protection violation 

 Page 771 

(count 2), retaliation in violation of his rights under the First Amendment to the United States Constitution (count 3), denial of procedural due process (count 4), denial of substantive due process (count 5), supervisory liability under 42 U.S.C. § 1983 (count 6), wrongful discharge (count 7), and for a declaratory judgment that "all Massachusetts prisoners have a RIGHT and ENTITLEMENT to a fair and impartial adjudication of their grievances" (count 10). [Note 3]

 In November 2018, a Superior Court judge permitted the plaintiff to supplement his complaint. In the supplemental complaint, the plaintiff sought judicial review of the denial of his grievance regarding the mailing of his original complaint (count 11). He also raised claims of denial of access to the courts (count 12) and supervisory liability under 42 U.S.C. § 1983 for violation of that right (count 13).

 Meanwhile, the plaintiff was rehired as a law clerk during or soon after June 2018. The plaintiff stated at oral argument that he nonetheless lost his seniority and his pay was reduced. The prison appropriately makes no argument that the termination grievance is moot. See Ralph v. Civil Serv. Comm'n, 100 Mass. App. Ct. 199, 201 n.4 (2021).

 Consistent with Superior Court Standing Order 1-96, the parties filed cross motions for judgment on the pleadings. A Superior Court judge affirmed the agency decisions on the grievances and dismissed the plaintiff's various nonadministrative claims for failure to state a claim on which relief can be granted. This appeal followed.

 2. Administrative claims. a. Standard of review. By statute, judicial review of DOC matters differs from ordinary administrative review and also differs by type of subject matter. In the case of review of inmate disciplinary hearings, the administrative procedures in G. L. c. 30A are inapplicable. See G. L. c. 30A, § 1A; Grady v. Commissioner of Correction, 83 Mass. App. Ct. 126, 131-133 (2013). These hearings are reviewed by a certiorari action under G. L. c. 249, § 4. See Beryl v. Superintendent, Souza-Baranowski Correctional Ctr., 55 Mass. App. Ct. 906, 907 (2002).

 Page 772 

 Where, as here, an inmate files a grievance against a prison outside the context of an inmate disciplinary hearing, most of the administrative procedures in G. L. c. 30A, including those governing the conduct of adjudicatory proceedings, are inapplicable. See G. L. c. 30A, § 1A. Nonetheless, "[a] final decision with respect to a grievance shall be subject to judicial review in accordance with" G. L. c. 30A, § 14. G. L. c. 127, § 38H. See Grady, 83 Mass. App. Ct. at 131-132.

 Under this statutory scheme, we may set aside or modify an agency decision if we determine "that the substantial rights of any party may have been prejudiced because the agency decision is -- (a) [i]n violation of constitutional provisions; or (b) [i]n excess of the statutory authority or jurisdiction of the agency; or (c) [b]ased upon an error of law; or (d) [m]ade upon unlawful procedure; or (e) [u]nsupported by substantial evidence; or (f) [u]nwarranted by facts found by the court on the record as submitted or as amplified . . . in those instances where the court is constitutionally required to make independent findings of fact; or (g) [a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (7). Our review of administrative procedure act claims "is limited to the administrative record." Miller v. Superintendent, Massachusetts Correctional Inst., Shirley, 99 Mass. App. Ct. 395, 400-401 (2021).

 b. First grievance. The handling of inmate grievances is governed by G. L. c. 127, § 38E (a), which requires that DOC "promulgate regulations to establish a fair, impartial, speedy and effective system for the resolution of grievances filed against the department, its officers or employees, by inmates." See G. L. c. 127, § 38E (b) (requiring certain elements in grievance system). In accordance with this instruction, DOC has created a series of regulations to govern the handling of inmate grievances. See 103 Code Mass. Regs. §§ 491.01-491.27 (2017). Of relevance here, the IGC must "thoroughly investigate the factual basis of the grievance and exhaust all efforts to resolve the grievance." 103 Code Mass. Regs. § 491.15(3)(d). This investigation must include (but is not limited to) "[i]nterview[ing] the inmate" and "[o]btain[ing] all related documentation." 103 Code Mass. Regs. § 491.15(3)(d). The records of the investigations are confidential, and all forms and documents "submitted by the inmate . . . shall be maintained in the IGC's file," except where 

 Page 773 

they are in the inmate management system. 103 Code Mass. Regs. § 491.23.

 Here, the plaintiff was fired after a typewriter motor went missing from the library. The plaintiff claimed, in his grievance, "I believe I can document that I had no connection to [the typewriter in question] at any relevant time." The IGC neither interviewed the plaintiff nor collected the documents that the plaintiff mentioned in the grievance form. [Note 4] Accordingly, the grievance process followed here did not comply with the regulations and thus was "[m]ade upon unlawful procedure." G. L. c. 30A, § 14 (7) (d). [Note 5]

 We turn, therefore to the issue whether the plaintiff's "substantial rights . . . may have been prejudiced." G. L. c. 30A, § 14 (7). "[T]he question is . . . whether the unlawfulness of the [agency]'s procedure may have affected the outcome." Rivas v. Chelsea Hous. Auth., 464 Mass. 329, 337338 (2013). See Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 691 (2012) ("the department was not prejudiced by the commission's reliance on expert testimony [improperly considered] because the commission's decision did not depend on that testimony"); Catlin v. Board of Registration of Architects, 414 Mass. 1, 7 (1992) (party's substantial rights not prejudiced where administrative record "does not contain any information which might have produced a different result"). Where an employee is terminated for specific wrongdoing, proof that the employee is not guilty of the wrongdoing, which is what the plaintiff offered here, is a persuasive reason to reinstate the employee. We cannot assume that the IGC, if satisfied of the plaintiff's innocence, would have nonetheless terminated him, much less that she would have done so for a reason that was not arbitrary or capricious. If the IGC had interviewed the plaintiff, reviewed the documents he mentioned, and concluded that the plaintiff was not involved with the typewriter 

 Page 774 

motor theft, the plaintiff might well have been reinstated to his library law clerk position without loss of pay or seniority. Therefore, the unlawful procedure may have prejudiced the plaintiff's substantial rights. Cf. Kniskern v. Melkonian, 68 Mass. App. Ct. 461, 466-467 (2007) (substantial rights are implicated when "a significant amount of money is at stake"). [Note 6]

 c. Second grievance. The defendants do not dispute that the eleven-day delay in mailing the plaintiff's original complaint was unreasonable. Rather, the sole dispute concerns whether the informal grievance was filed within five "working days" of the plaintiff's becoming aware of the late delivery, Mass. Dep't of Correction Informal Complaint Resolution Standard Operating Procedures, see 103 Code Mass. Regs. § 491.09(3), a question made all the more difficult by the fact that we do not know what a "working day" is. [Note 7] The plaintiff asserts that he learned of the delay on the day he filed the grievance, when he checked on the matter because he had not received any responsive paperwork from the Superior Court.

 We need not resolve this question of timeliness, however, because the plaintiff has not demonstrated that his substantial rights were prejudiced. The plaintiff exhausted his administrative review of his first grievance on January 24, 2018, making his complaint for judicial review due thirty days after he received notice of the final denial, on approximately February 23. See G. L. c. 30A, § 14 (1); Grady, 83 Mass. App. Ct. at 132. Because of the delay in mailing, the Superior Court did not receive the complaint until March 1.

 Nonetheless, relying on the principles elucidated in Commonwealth v. Hartsgrove, 407 Mass. 441, 444-445 (1990), the Superior Court and the parties treated the plaintiff's complaint as timely filed on the day that it was deposited in the prison mail system. See Pavian, Inc. v. Hickey, 70 Mass. App. Ct. 477, 483 (2007), S.C., 452 Mass. 490 (2008). Cf. Mass. R. A. P. 13 (a) (2), as appearing in 481 Mass. 1624 (2019) (same rule for Appeals Court filings). As a result, the plaintiff's complaint was not deemed 

 Page 775 

untimely, nor has the plaintiff explained any other way in which he was prejudiced by the delay in mailing.

 Furthermore, the plaintiff's substantial rights were not prejudiced by his failure to receive his requested relief -- "a letter assuring [him] that this would not happen again." Here, the superintendent functionally provided the plaintiff with his requested relief when he stated, in his denial of the plaintiff's appeal, that "it should be noted that every effort is made to process the mail. It shall continue to be a priority for this facility." 

 3. Nonadministrative claims. a. Standard of review. Where an action for judicial review of an administrative decision is joined with nonadministrative claims, the nonadministrative claims are reviewed as in ordinary civil actions. See Miller, 99 Mass. App. Ct. at 400-401. "A motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c)[, 365 Mass. 754 (1974),] is 'actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.'" Mullins v. Corcoran, 488 Mass. 275, 281 (2021), quoting Jarosz v. Palmer, 436 Mass. 526, 529 (2002). "We accept the truth of all well-pleaded facts alleged by, and 'draw every reasonable inference in favor' of, the nonmoving party." UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 405 (2019), quoting Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). We review the judge's order de novo. See Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733 (2018).

 b. Defamation. i. Generally. "To prevail on a claim for defamation, a plaintiff must establish that (1) the defendant published a defamatory statement of and concerning the plaintiff; (2) the statement was a false statement of fact (as opposed to opinion); (3) the defendant was at fault for making the statement, and any privilege that may have attached to the statement was abused; and (4) the plaintiff suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss." Lawless v. Estrella, 99 Mass. App. Ct. 16, 1819 (2020), citing Downey v. Chutehall Constr. Co., 86 Mass. App. Ct. 660, 663 (2014). "A statement that is claimed to be defamatory must reasonably be understood either as a statement of actual fact, or one that implies defamatory facts." Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 53 (2020).

 Here, when the plaintiff asked why he had been terminated, Deputy Superintendent Kelly allegedly said in an angry voice, 

 Page 776 

"Things have gone missing from the Library." [Note 8] It is true, as the defendants argue, that this statement could be understood literally -- as merely stating that the plaintiff had been fired because things were missing, without suggesting that he was involved in their theft. The statement, however, could also be understood, in context, as an implicit assertion that the plaintiff himself had been involved in the theft in some manner. As the plaintiff alleges that he was not involved in the theft and that there was inadequate reason to believe that he was involved in the theft, the amended complaint alleges that Deputy Superintendent Kelly made an implicit false statement of fact and was at fault in doing so. Because the statement allegedly accused the plaintiff of a crime, it was actionable without proof of economic loss. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003).

 ii. Defamation-proof plaintiff. The defendants invoke the principle of the defamation-proof plaintiff established in Massachusetts in Jackson v. Longcope, 394 Mass. 577, 578-580 (1985). The Supreme Judicial Court there held that a plaintiff may be libel-proof because of an already existing poor reputation, but, for summary judgment purposes, "it must be clear, as a matter of law, that the reputation of a plaintiff, even a convicted felon, could not have suffered from the publication of the false and libelous statements." Id. at 580. At least for the purposes of a motion to dismiss, this standard has not been met. [Note 9]

 In Jackson, 394 Mass. at 580-581, the plaintiff had been previously convicted of murder, rape, kidnapping, unarmed robbery, armed assault with the intent to murder, and unlawfully carrying a firearm. In those circumstances, a newspaper article suggesting that he had been involved in a stolen car chase or had strangled and raped additional women could not further damage his reputation. See id. at 582. The current situation is unlike that in Jackson; Deputy Superintendent Kelly did not accuse the plaintiff of being violent, an alcoholic, or a domestic abuser, accusations consistent with the crimes of which he was convicted. 

 Page 777 

See Sullivan, 131 N.H. at 210-212. Rather, Deputy Superintendent Kelly allegedly accused him of theft, an accusation that was not consistent with the plaintiff's prior criminal history and that had the tendency to harm his reputation within the prison, with both his fellow inmates and the correction officers who would be involved in making employment decisions. Accordingly, the plaintiff is not defamation-proof as a matter of law for the purposes of a motion to dismiss.

 iii. Conditional privilege. Deputy Superintendent Kelly enjoyed a conditional privilege as a workplace investigator and as a public official. See Lawless, 99 Mass. App. Ct. at 22-23. The conditional privilege applies where "receipt of the information is reasonably necessary to serve a substantial and valid business interest of the employer," but is lost "if the plaintiff proves that the disclosure . . . was recklessly disseminated." Bratt v. International Business Machs. Corp., 392 Mass. 508, 510, 517 (1984). This occurs where "(1) there is 'unnecessary, unreasonable or excessive publication,' and the defendant recklessly published the defamatory statements; (2) the defendant published the defamatory statements with knowledge of their falsity or with reckless disregard of the truth; or (3) the defendant acted with actual malice." Lawless, supra at 24, quoting Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 631 (2012).

 The plaintiff alleges that Deputy Superintendent Kelly made the statement loudly and "in a room filled with inmates and DOC employees." Although Deputy Superintendent Kelly had a business purpose for discussing prison library employment decisions, disclosures beyond the plaintiff and those involved in these decisions were not warranted by this purpose. Contrast Mulgrew v. Taunton, 410 Mass. 631, 635 (1991) (no excessive publication where chief of police made statement to committee charged with recommending to city council whether plaintiff should be reinstated as police officer); Foley v. Polaroid Corp., 400 Mass. 82, 87, 95-96 (1987) (no excessive publication where statements were made by one Polaroid executive to another executive, and to an "employee representative" inquiring about possibility of rehiring plaintiff); McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 236 (1984) (privilege extends to disclosure of poor evaluations to department head); Lawless, 99 Mass. App. Ct. at 24 (no excessive publication where statements "were published only once, and only in response to the selectman's specific request"); Barrows, 82 Mass. App. Ct. at 632 (no excessive 

 Page 778 

publication where allegations not disclosed beyond plaintiff and plaintiff's immediate supervisor until plaintiff requested they be made public). The conditional privilege, however, is not lost "by the mere fact that the defamatory matter was incidentally overheard by disinterested persons." Galvin v. New York, N.H. & H.R.R., 341 Mass. 293, 298 (1960). Rather, it is lost only where the unnecessary publication was the result of recklessness by the defendant. See Bratt, 392 Mass. at 517.

 Here, Deputy Superintendent Kelly made the accusation only once and directly to the plaintiff in response to his question. It was the plaintiff, already aware that his firing involved the stolen motor, who chose to ask Deputy Superintendent Kelly why he was fired "in a room filled with inmates and DOC employees." Even in the light most favorable to the plaintiff, the excessive disclosure of the accusation was the result of the plaintiff's actions and not of recklessness by Deputy Superintendent Kelly.

 This case is also dissimilar to Galvin, where the defendant loudly accused the plaintiff of theft in front of four or five truck drivers five times, including twice after the plaintiff suggested that they discuss the matter "away from this crowd." 341 Mass. at 295. Here the accusation was made only once and the plaintiff initiated the confrontation in front of a crowd.

 Regarding actual malice, "to survive a motion to dismiss, [the plaintiff] must allege sufficient facts to establish that [the defendant] knew the statements were false, or acted with reckless disregard for their truth or falsity." Edwards v. Commonwealth, 477 Mass. 254, 263 (2017), S.C., 488 Mass. 555 (2021). Accord Netherwood v. American Fed'n of State, County & Mun. Employees, Local 1725, 53 Mass. App. Ct. 11, 18 (2001). At a minimum, "reckless disregard" in this context requires that Deputy Superintendent Kelly "had no reason to believe [the false statements] to be true." Bratt, 392 Mass. at 514, quoting Sheehan v. Tobin, 326 Mass. 185, 192 (1950). Cf. Edwards, supra, quoting Murphy v. Boston Herald, Inc., 449 Mass. 42, 48 (2007) (in constitutional context at least, "[r]eckless disregard requires more than negligence; a plaintiff must prove that the individual making the alleged defamatory statement 'entertained serious doubts as to the truth' of the statement").

 Here, the plaintiff alleges that Correction Officer Salerno "was responsible for maintaining security in the School/Library building" and had the responsibility to investigate the theft. He further alleges that "[t]his false allegation came from or was otherwise 

 Page 779 

shared with Salerno." Although the plaintiff points to vast deficiencies in Salerno's investigation, he alleges no facts that would have put Deputy Superintendent Kelly on notice of Correction Officer Salerno's unreliability. Contrast Murphy, 449 Mass. at 60 (actual malice where "substantial doubts have been raised as to the veracity of a reporter's information"); Van Liew v. Eliopoulos, 92 Mass. App. Ct. 114, 123 (2017) (actual malice where defendant knew that multiple investigators had found no wrongdoing by plaintiff). See White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 72 (2004) ("If defamation law is to provide a remedy . . ., the correct party to be charged with culpability must be, as it always has been, the originator of the defamatory statement communicated to a third party"). In short, the plaintiff alleges no facts that could support a finding of knowing falsehood or reckless disregard for truth or falsity.

 Although discouraging employees from making suggestions to improve prison library operations may be unwise, the mere fact that Deputy Superintendent Kelly told the plaintiff that she was unhappy with the quantity of his complaints is inadequate to show actual malice. Indeed, even "[e]vidence of ill will or spite is insufficient, standing alone, to establish actual malice." Edwards, 477 Mass. at 266. Even if the defendant has "spiteful, negative feelings toward" the plaintiff, the plaintiff nonetheless is "required to allege specific facts to prove that [the defendant] made [her] statements . . . with knowledge of their falsity or with reckless disregard of their truth or falsity." Id. at 267. Accord Netherwood, 53 Mass. App. Ct. at 18. Accordingly, as the Superior Court judge found, the defamation claim is barred by the conditional privilege even on the facts as alleged by the plaintiff.

 c. Claims based on a right to a job. The plaintiff argues that he has a statutory right to prison employment because New Hampshire law provides such, see N.H. Rev. Stat. Ann. § 622:7, and the New England Interstate Corrections Compact (compact) entitles him to "any legal rights" he enjoyed in New Hampshire. St. 1962, c. 753, § 2, art. 4 (e). This is a complicated question of law. Compare Barrett v. Peters, 360 Ore. 445, 454 (2016) (prisoner transferred to Florida from Oregon entitled to be incarcerated under conditions complying with Oregon Constitution), with Garcia v. Lemaster, 439 F.3d 1215, 1219-1220 (10th Cir. 2006) (prisoner transferred to California from New Mexico not entitled to recreation in accordance with New Mexico law); Daye v. State, 171 Vt. 475, 481 (2000) ("courts have uniformly rejected claims 

 Page 780 

that transferred prisoners are entitled to the same disciplinary, classification, visitation, and grooming policies as prisoners in the sending state"). Fortunately, we need not resolve it today, see note 3, supra, because there is no claim that the plaintiff is entitled to any specific job under the compact, and the prison agreed to "work[] with [him] to secure him alternate employment." Cf. Laaman v. Helgemoe, 437 F. Supp. 269, 318 (D.N.H. 1977) (indicating inmate's right to work under New Hampshire law is not unlimited).

 As a result, the plaintiff had no "legitimate claim of entitlement to" this specific prison job. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). See LaChance v. Commissioner of Correction, 88 Mass. App. Ct. 507, 512 n.9 (2015) ("loss of prison employment or participation in the garden program does not implicate a liberty or property interest"). In the absence of the "deprivation of a constitutionally protected liberty or property interest," the plaintiff's procedural due process claim fails. Doe, Sex Offender Registry Bd. No. 474362 v. Sex Offender Registry Bd., 94 Mass. App. Ct. 52, 58 (2018).

 Similarly, the plaintiff's common-law wrongful discharge count is solely derivative of his claim based on the compact, so this analysis is applicable to that claim as well.

 d. Other claims. The plaintiff's "class of one" equal protection claim requires him to "show that '(i) he was treated differently than other[s] similarly situated . . . and (ii) the differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness.'" Mancuso v. Massachusetts Interscholastic Athletic Ass'n, 453 Mass. 116, 128-129 (2009), quoting Pagan v. Calderon, 448 F.3d 16, 34 (1st Cir. 2006). Although he alleges that his termination was arbitrary, "an arbitrary denial of a [discretionary benefit] in violation of state law -- even in bad faith -- does not rise above the constitutional threshold for equal protection . . . claims." Mancuso, supra at 129, quoting Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000), cert. denied, 532 U.S. 995 (2001).

 The plaintiff's First Amendment retaliation claim fails because, when he complained about the prison library staffing, he was speaking as an employee, not as a citizen on a matter of public concern. See Cristo v. Evangelidis, 90 Mass. App. Ct. 585, 592 (2016) (plaintiff was speaking as public employee where he "learned about the matters that he reported to [his boss] in the course of performing his job duties[, t]he subjects of his speech 

 Page 781 

[were] all matters that are directly related to [the plaintiff's work duties,] . . . . [he] aired his complaints while on duty[, he] did not share the contents of his complaints with anyone other than his immediate supervisor[, and he] did not make use of a forum outside the workplace to communicate his complaints").

 The plaintiff's substantive due process claim fails because he does not allege any government action that "'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" Josh J. v. Commonwealth, 478 Mass. 716, 721 (2018), quoting Rochin v. California, 342 U.S. 165, 172 (1952); Palko v. Connecticut, 302 U.S. 319, 325-326 (1937).

 The plaintiff's claim of denial of access to the courts fails because he does not allege that the "deficiencies [in his access to the courts] hindered his efforts to present a nonfrivolous legal claim." Puleio v. Commissioner of Correction, 52 Mass. App. Ct. 302, 311 (2001), citing Lewis v. Casey, 518 U.S. 343, 351-353 (1996). As discussed supra, the delay in mailing his complaint caused the plaintiff no prejudice.

 The plaintiff's two claims of supervisory liability under 42 U.S.C. § 1983 fail because, for a supervisor to be liable under § 1983 for the actions of a subordinate, the subordinate's conduct must have amounted to a § 1983 violation. See Clancy v. McCabe, 441 Mass. 311, 317 (2004), quoting Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994) ("there must be an 'affirmative link' between the supervisory official's acts or omissions and his subordinate's violation of the plaintiff's constitutional rights"). Because the plaintiff's § 1983 claims fail, so too do his supervisory liability claims.

 Finally, a declaratory action requires an "actual controversy," G. L. c. 231A, § 1, which "exists when there is a 'real dispute caused by the assertion by one party of a legal relation, status or right in which he had a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.'" Maroney v. Planning Bd. of Haverhill, 97 Mass. App. Ct. 678, 683 (2020), quoting Wells Fargo Fin. Mass., Inc. v. Mulvey, 93 Mass. App. Ct. 768, 771 (2018). The plaintiff seeks a declaration "that all Massachusetts prisoners have a RIGHT and ENTITLEMENT to a fair and impartial adjudication of their grievances and strict adherence by DOC personnel to the requirements 

 Page 782 

of 103 [Code of Mass. Regs. §§] 491.00 et seq." Although the prison plainly does not achieve compliance with its regulations in every case, nothing in the record suggests that the prison disputes the entitlement of the plaintiff to a fair and impartial adjudication of his grievances in accordance with DOC regulations. Accordingly, there is no actual controversy to support a declaratory judgment.

 4. Conclusion. So much of the judgment as dismissed count 1 of the amended complaint (first grievance) is reversed, and the matter is remanded for further proceedings. The judgment is otherwise affirmed. [Note 10]

 So ordered.

FOOTNOTES
[Note 1] Steven P. Kenneway, individually and in his capacity as superintendent of Massachusetts Correctional Institution, Shirley (MCI-Shirley); Raymond Marchilli, individually and in his capacity as former superintendent of MCI-Shirley; Sheila C. Kelly, individually and in her capacity as former deputy superintendent of programming of MCI-Shirley; Anthony Salerno, individually and in his capacity as a correctional officer of MCI-Shirley; and Darel Oja, individually and in his capacity as a correctional officer, MCI-Shirley. 

[Note 2] We draw the facts from the administrative record and from the factual allegations in the plaintiff's amended complaint and supplemental complaint. See Arbella Mut. Ins. Co. v. Commissioner of Ins., 456 Mass. 66, 68 n.4 (2010). 

[Note 3] The plaintiff also raised a count for a declaratory judgment that he has a right to a prison job under the New England Interstate Corrections Compact (count 9). See St. 1962, c. 753. He made no argument about this count in his opposition to the prison's motion to for judgment on the pleadings or in his brief. Accordingly, it is not before us. See Malden Police Patrolman's Ass'n v. Malden, 92 Mass. App. Ct. 53, 62 n.11 (2017). 

[Note 4] The plaintiff argues that two notices to appear that were included in the administrative record are fraudulent because the interviews scheduled through the notices to appear never occurred. The notices indicate only that the interviews were scheduled, not that any interview took place. At oral argument, counsel for DOC forthrightly stated that the record does not show any interview having occurred. 

[Note 5] "[I]n cases of alleged irregularities in procedure before the agency, not shown in the record," a party may request leave of the court to present "testimony thereon." G. L. c. 30A, § 14 (5). Here, the administrative record is adequate to show the procedural deficiency. 

[Note 6] When a party demonstrates that "additional evidence is material to the issues in the case, and that there was good reason for failure to present it in the proceeding before the agency, the court may order" the department to take the additional evidence, allowing it to reconsider its decision before further judicial review occurs. G. L. c. 30A, § 14 (6). 

[Note 7] A late grievance does not require investigation. See 103 Code Mass. Regs. § 491.15(3)(d). 

[Note 8] Although the complaint alleges defamation by Correction Officer Salerno and former Superintendent Marchilli, in both his opposition to judgment on the pleadings and in his briefing to us the plaintiff asserted a defamation claim only against Deputy Superintendent Kelly. 

[Note 9] The prison does not argue, for the purposes of its motion to dismiss, that Deputy Superintendent Kelly is entitled to qualified immunity as a matter of law. Cf. Rosado v. Commissioner of Correction, 91 Mass. App. Ct. 547, 554 n.8 (2017) (not reaching question of qualified immunity for defamation claim against prison officials by inmate). 

[Note 10] We reject the plaintiff's request that we remand the case to a different Superior Court judge. Although we reverse in part, the judge's decision shows "rational explanations for his conclusions." Commonwealth v. Bresnahan, 462 Mass. 761, 774 n.18 (2012). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.