NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-819                                          Appeals Court


  CHRISTOPHER DOWNEY & another[1] vs.  CHUTEHALL CONSTRUCTION CO.,
      LTD.; THE FOLLETT COMPANY, INC., third-party defendant.


                        No. 13-P-819.

     Suffolk.     September 15, 2014. - November 13, 2014.

           Present:  Berry, Kafker, & Carhart, JJ.



Libel and Slander.  Consumer Protection Act, Unfair or deceptive
     act.  Privileged Communication.  Evidence, Opinion,
     Privileged communication.  Practice, Civil, Summary
     judgment, Entry of judgment.




     Civil action commenced in the Superior Court Department on
July 2, 2010.

     A motion for partial summary judgment was heard by Judith
Fabricant, J., and entry of final and separate judgment was
ordered by her.


     John D. Fitzpatrick for Chutehall Construction Co., Ltd.
     Heather Gamache for The Follett Company, Inc.


     KAFKER, J.  Homeowners Christopher and Mairead Downey (the

Downeys) hired a contractor, The Follett Company, Inc.

(Follett), to investigate the cause of their leaky roof.

_____

     [1] Mairead Downey.

Follett reported that the roof had been installed a number of years earlier over fiberboard roof insulation that was soaking wet, thereby causing the later leakage. The Downeys then sued the installer of the roof, Chutehall Construction Co., Ltd. (Chutehall), for substandard workmanship, and Chutehall brought third-party defamation and G. L. c. 93A claims against Follett, asserting that the statement about installing the roof over the soaking wet fiberboard insulation was false and defamatory. A Superior Court judge granted Follett's motion for summary judgment on Chutehall's claims against Follett. Follett then filed a motion for the entry of a separate and final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), which Chutehall opposed. The judge allowed Follett's motion, judgment entered, and this appeal followed.

On appeal, Chutehall argues that the judge erred in deciding as a matter of law (1) that Follett's report about the roof constituted a statement of opinion not fact, (2) that Follett was not negligent in making the statement, and (3) that the statement was protected by a conditional privilege. Chutehall also argues that the judge erred in allowing the motion for entry of separate and final judgment. We conclude that the statement by Follett was protected by a conditional privilege that was not abused, and therefore, summary judgment was properly allowed on the defamation claim. As the c. 93A

claim depends on the merits of the defamation claim, summary judgment was properly allowed on this claim as well.  There was no error in the entry of judgment pursuant to Mass.R.Civ.P. 54(b).

1.  Background.  In 2005, the Downeys entered a contract with Chutehall pursuant to which Chutehall installed a new rubber roof system on the Downeys' townhouse in the Beacon Hill section of Boston.  In 2009, another contractor, hired by the Downeys to install a rooftop heating, ventilation, and air conditioning (HVAC) unit for their home, cut a hole in the roof and discovered that the underlying roof system was wet.  At the contractor's suggestion, the Downeys engaged Follett and J.M. Lydon Corp. (Lydon), both roofing contractors, to inspect the roof.  In addition, the Downeys hired Gregory R. Doelp, a structural engineer, to evaluate the roof and any proposals submitted by Follett and Lydon.  After Follett, Lydon, and Doelp performed their on-site investigations of the roof, the Downeys requested that they each prepare written findings of their observations.  Specifically, the Downeys requested that Follett help them understand why the roof was wet and what had caused the leakage problems.  Follett's written report, titled "Roof Observations," stated, "This roof was installed over a EPDM roof system that had fiberboard roof insulation that was soaking wet."  Follett recommended that the entire roofing system be

removed and replaced.  The Downeys ultimately hired Follett to carry out this recommendation.

In 2010, the Downeys filed a complaint in Superior Court against Chutehall to recover damages to their townhouse allegedly caused by substandard roofing work performed by Chutehall in 2005.  In response to the Downeys' lawsuit, Chutehall asserted third-party claims against Follett for defamation and violation of G. L. c. 93A, alleging Follett's statement that the roof was installed over wet insulation was false and defamatory.[2]  Chutehall's c. 93A claim is based entirely on its allegation of defamation.  On Follett's motion for summary judgment, the Superior Court judge ruled that the alleged defamatory statements were not statements of fact, but of Follett's professional opinion, that the statements were not negligently made, and that, in any event, they were conditionally privileged.  The judge further ruled that because Chutehall's c. 93A claim rested entirely on the allegation of defamation, that claim must fail as well.  A separate and final

---

[2] Originally, Chutehall's defamation claim was based on two statements:  the statement made by Follett in the "Roof Observations" report, and a written statement made by Christopher Downey in a prelitigation demand letter to Chutehall, in which Downey wrote that Follett "noted that the roofing workmanship was in fact poor and substandard." Chutehall has waived the issue of this second statement on appeal, and the only statement we considered is Follett's written statement.

judgment entered pursuant to Mass.R.Civ.P. 54(b), and Chutehall filed a timely notice of appeal.

2. Discussion. The defendant must prevail on its motion for summary judgment "if [it] demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the [plaintiff] has no reasonable expectation of proving an essential element of [its] case." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). "A complete failure of proof concerning an essential element of the [plaintiff's] case renders all other facts immaterial." Id. at 711. We view the evidence in the light most favorable to the nonmoving party. See Currier v. National Bd. of Med. Examiners, 462 Mass. 1, 11 (2012); Dragonas v. School Comm. of Melrose, 64 Mass. App. Ct. 429, 430 (2005).

a. Chutehall's defamation claim. In order for Chutehall to recover on its defamation claim, it must establish that (1) Follett published a defamatory statement of and concerning Chutehall; (2) the statement was a false statement of fact (as opposed to opinion); (3) Follett was at fault for making the statement and any privilege that may have attached to the statement was abused; and (4) Chutehall suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss. See Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 858-859 (1975); Phelan v. May

Dept. Stores Co., 443 Mass. 52, 55-56 (2004); Restatement (Second) of Torts §§ 558, 599, 600 (1977).

i. Distinction between opinion and fact. To determine whether the statement in question is defamatory, the court must decide whether it is an assertion of fact or opinion. The distinction is often subtle and difficult, particularly at the summary judgment stage. King v. Globe Newspaper Co., 400 Mass. 705, 709 (1987), cert. denied, 485 U.S. 940 and 485 U.S. 962 (1988), quoting from Janklow v. Newsweek, Inc., 788 F.2d 1300, 1302 (8th Cir.), cert. denied, 479 U.S. 883 (1986) ("It is hard to draw a bright line between 'fact' and 'opinion'"). The determination is considered a question of law only when it is unambiguous. See ibid. See also Driscoll v. Board of Trustees of Milton Academy, 70 Mass. App. Ct. 285, 296 (2007); Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000), cert. denied, 531 U.S. 1075 (2001). In contrast, "the determination whether a statement is a factual assertion or a statement of pure opinion is a question of fact if the statement reasonably can be understood both ways." King v. Globe Newspaper Co., supra. See Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 733-734 (1986). Therefore, in a defamation action, "the defendant is entitled to summary judgment if the challenged statement cannot reasonably be construed as a statement of fact." King v. Globe Newspaper Co., supra.

"However, if a statement is susceptible of being read by a reasonable person as either a factual statement or an opinion, it is for the jury to determine." Aldoupolis v. Globe Newspaper Co., supra.

In determining whether an assertion is a statement of fact or opinion, "the test to be applied . . . requires that the court examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." Cole v. Westinghouse Bdcst. Co., 386 Mass. 303, 309, cert. denied, 459 U.S. 1037 (1982), quoting from Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980).

We do not consider this assertion an unambiguous statement of opinion appropriate for summary judgment. The defamatory statement on its face appears directly and definitively factual.[3] "This roof was installed over a EPDM roof system that had fiberboard roof insulation that was soaking wet." Importantly,

_____

[3] In his deposition, Follett states that it would have been "impossible" for the insulation not to have been wet when the roof was installed. See part 2.a.iii, infra.

in contrast to statements of opinion, statements that present or imply the existence of facts that can be proven true or false are actionable. See Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir. 1997), citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990); Gray v. St. Martin's Press, Inc., 221 F.3d at 248, also citing Milkovich, supra at 18-20. Here, Follett stated that the Downeys' roof had been installed over wet insulation. This appears to be an assertion of fact that, at least in theory, could be verified as either true or false.[4]

Nevertheless, as the motion judge pointed out, the installation of the roof was done four years earlier when Follett was not present, and thus the motion judge concluded that the statement "can reasonably be understood only as an expression of Follett's professional judgment, based on its observations at the time it examined the roof." The published statement is not, however, in any way introduced as an expression of opinion. See, e.g., Information Control Corp. v. Genesis One Computer Corp., 611 F.2d at 784 (statement "cautiously prefaced as representing 'the opinion of . . . management'"). Nor is the statement expressly qualified or limited as being based on the results of particular

---

[4] In Doelp's deposition, for example, he stated that he could have figured out why the insulation was wet but was never asked to make that determination. See part 2.a.iii, infra.

observations. See Restatement (Second) of Torts § 566 comment c & illustration 4 ("A writes to B about his neighbor C: 'He moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair with a portable radio listening to a news broadcast, and with a drink in his hand. I think he must be an alcoholic.' The statement indicates the facts on which the expression of opinion was based and does not imply others. These facts are not defamatory and A is not liable for defamation"). Finally, the audience, i.e., ordinary homeowners, could, we conclude, reasonably be expected to understand Follett's statement as one of determined fact and not just a qualified opinion, despite their understanding that Follett did not personally observe the installation. See Cole v. Westinghouse Bdcst. Co., 386 Mass. at 309.

In sum, although it is a close question, we conclude that the unqualified factual assertion here, which might have been proven true or false, could reasonably be construed as a defamatory statement of fact. Summary judgment should not have been granted on the ground that it was an unambiguous opinion. We therefore turn to the questions of fault and privilege.

ii. Demonstration of fault. Private persons or entities may recover on defamation claims on proof that the defendant was negligent in publishing defamatory statements, which reasonably

could be interpreted to refer to the plaintiff, assuming proof of all other elements of a claim for defamation has been provided.  See Stone v. Essex County Newspapers, Inc., 367 Mass. at 858; New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 477 (1985).  If, however, a conditional privilege applies to the communication, negligence is not enough, as at least recklessness is required.  See Bratt v. International Bus. Machs. Corp., 392 Mass. 508, 514 (1984). We turn to the privilege issue next, as we consider it dispositive in the instant case.

   iii.  Conditional privilege.  "The burden is on the defendant[] to prove, when the issue is properly raised, the existence of a privilege to publish a defamatory communication." Jones v. Taibbi, 400 Mass. 786, 802 (1987).  Where, as here, a defendant in a defamation action establishes the existence of a privilege, the burden rests upon the plaintiff to raise a trial-worthy issue of an abuse of that privilege.  See Judd v. McCormack, 27 Mass. App. Ct. 167, 173 (1989); Dragonas v. School Comm. of Melrose, 64 Mass. App. Ct. at 438.  In this case, this would require Chutehall to have introduced sufficient evidence to establish that Follett published the statements recklessly. Based on our review of the record, we conclude that Chutehall's defamation claim failed as a matter of law because the statement

is conditionally privileged, and there is no genuine issue of material fact regarding recklessness.

Under Massachusetts law, a publication will be deemed conditionally privileged if the publisher of the statement and the recipient have a common interest in the subject and the statement is "reasonably calculated to further or protect that interest." Sheehan v. Tobin, 326 Mass. 185, 190-191 (1950) (citation omitted). See Humphrey v. National Semiconductor Corp., 18 Mass. App. Ct. 132, 133 (1984) (privilege applies to employee of one company making disparaging comments about performance of employee of another company with which first has business relationship); Flotech, Inc. v. E.I. Du Pont de Nemours & Co., 814 F.2d 775, 778 (1st Cir. 1987) (privilege applies to company's statement that it views its own product as ineffective for particular purpose even if statement implies ineffectiveness of third party's product); Restatement (Second) of Torts § 596. The courts have consistently recognized the common interest privilege within the business context. See Bratt v. International Bus. Machs. Corp., 392 Mass. at 512-513 ("Massachusetts courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest"); Humphrey v. National Semiconductor Corp., supra at 133-134.

Despite Chutehall's assertions to the contrary, Follett's statement involved a common business interest between Follett and the Downeys, i.e., the evaluation of the likely source of the roof's leak so that repairs could be made. Follett's statement furthered this common business interest as it affected the Downeys' decision on how they should proceed in addressing the roof's leakage. Additionally, the statement was made in Follett's professional capacity and only after the Downeys specifically requested Follett to explain the source of the leak. The exchange between Follett and the Downeys is assuredly of the type contemplated by the privilege, and to claim otherwise would rob the privilege of its intended purpose.

This conclusion is supported by case law from other jurisdictions as well. As seen in Briggs v. Newton, 984 P.2d 1113, 1121 (Alaska 1999), the common business interest privilege was applied to a statement made by a contractor to his client regarding the work of prior contractors. The Alaska Supreme Court emphasized that the business privilege is "clearest when a legal relationship exists between the defendant and the person on whose behalf" he is making the contested statement, and the communication serves the purposes of that legal relationship. Ibid. (citation omitted). In Briggs, as in the instant case, the defendant and his client had a contractual relationship related to the need for repair work on the house, and the

communication was included in a document that was designed to explain the need for such repair work.

Moreover, nothing in the record suggests that this conditional privilege was forfeited by Follett. Massachusetts case law maintains that a publisher may abuse, and lose, a conditional privilege in a number of ways, including if the plaintiff offers proof that the defendant (1) acted out of malice, (2) knew the information was false, (3) had no reason to believe the information to be true, (4) acted in reckless disregard of the truth or the defendant's rights, or (5) published the information unnecessarily, unreasonably, or excessively. See Bratt v. International Bus. Machs. Corp., 392 Mass. at 513-515; Dragonas v. School Comm. of Melrose, 64 Mass. App. Ct. at 438-439. As underscored by the Supreme Judicial Court, "whatever the manner of abuse, recklessness, at least, should be required" to overcome the privilege. Bratt v. International Bus. Machs. Corp., supra at 515. See Dexter's Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass. App. Ct. 217, 223 (1987) ("Recklessness is the minimum level of misconduct"). Negligence is not enough to cause the loss of the privilege.

Recklessness is a difficult standard to meet. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published or would have investigated before

14

publishing." HipSaver, Inc. v. Kiel, 464 Mass. 517, 530 (2013), quoting from St. Amant v. Thompson, 390 U.S. 727, 731 (1968). Rather, the defendant's conduct is measured by what the defendant had reason to believe. See Foley v. Polaroid Corp., 400 Mass. 82, 95-96 (1987). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." HipSaver, Inc. v. Kiel, supra. Cf. Garrison v. Louisiana, 379 U.S. 64, 74 (1964) (equating "reckless disregard" with "high degree of awareness of . . . probable falsity").

Follett's deposition, through its designee, Donald Follett, demonstrates that he undertook an investigation before proffering the conclusion that the most recently installed roof had been put in over wet insulation. Donald Follett conducted two on-site inspections of the roof and made several test cuts in the roofing system. He determined that the top roof membrane and insulation was dry but the underlying roof materials were soaking wet. He also concluded that the wetness at the higher elevations was consistent with the wetness at the lower areas. He stated that at the very top area of the roof there were "no penetrations for water to get in." These test cuts and observations led him to conclude that the uppermost roofing system had been installed over wet insulation. Indeed he stated at his deposition that "it would have been impossible that that

roof . . . insulation was not wet" when the roof was installed. He described himself as "convinced," so much so that once he made the test cuts, he did not do further investigation regarding leaks.

Similarly, the facts led Lydon, the other roofing contractor that examined the Downeys' roof, to conclude, "This roof would be adequate if it was not installed over a wet roof." Doelp, the engineer hired by the Downeys to evaluate the roof and the repair proposals made by Follett and Lydon, testified that Follett's conclusion was plausible, and that Donald Follett, a roofer, would be in a "better position than I would be to make that judgment."

Doelp did, however, acknowledge some uncertainty. Based on his own investigation, Doelp testified that he could not be sure Chutehall's 2005 work on the Downeys' roof was the source of the leakage problems, as he had also identified other potential sources of the wetness of the insulation and leakage. He noted, for example, that there were potential leak problems around the head house, chimney, and metal parapet. He further stated that the water "could have been there when they put the roof over. [But] [i]t could have happened later." He did not know. He speculated that he "could figure that out, but . . . was never asked to do that."

The record here does not support a finding of recklessness. The facts at Follett's disposal provided solid reasons to believe the statement it made to the Downeys. Donald Follett testified that he was firmly convinced by his investigation. Although there is a question whether Follett should have done more to investigate the source of the leak, and that leads to some uncertainty about the correctness of its conclusions, in the absence of any evidence that Follett "entertained serious doubts as to the truth of [the] publication," HipSaver, Inc. v. Kiel, 464 Mass. at 530, Chutehall has failed to demonstrate a genuine issue of material fact regarding recklessness. The judge did not err in allowing Follett's motion for summary judgment on Chutehall's defamation claim.

b. The G. L. c. 93A claim. As conceded by Chutehall, its G. L. c. 93A claim is based on the alleged defamatory statements made by Follett. Accordingly, this claim rises or falls on the outcome of the defamation claim. Dulgarian v. Stone, 420 Mass. 843, 853 (1995) ("[W]here allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under G. L. c. 93A"). Therefore, the trial judge properly allowed Follett's motion for summary judgment on Chutehall's G. L. c. 93A claim.

c. Final and separate judgment. Under Mass.R.Civ.P. 54(b), "the court may direct the entry of a final judgment as to

one or more but fewer than all of the claims or parties . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." "Whether there are multiple claims in an action and whether those claims have been finally adjudicated are matters of law subject to plenary review by an appellate court." Long v. Wickett, 50 Mass. App. Ct. 380, 386 (2000). "The determination of the presence or absence of a just reason for delay, on the other hand, is left to the sound discretion of the trial judge and is subject to reversal only for an abuse of that discretion." Ibid. The record supports the trial judge's decision that there was no just reason for delay given that Chutehall's claims against Follett were independent of the claims between Chutehall and the Downeys.[5] We decline to vacate the entry of separate and final judgment.

3. Conclusion. For the reasons discussed above, the judge did not err in allowing Follett's motion for summary judgment on Chutehall's defamation and c. 93A claims or in entering a separate and final judgment as to those claims.

> Judgment entered January 22, 2013, pursuant to Mass.R.Civ.P. 54(b) affirmed.

---

[5] Although not argued by the parties, we also note that the issue may be moot, as the remaining claims between Chutehall and the Downeys have proceeded to judgment.