APPEALS COURT 
 
 DAVID M. SABATINI vs. KRISTIN A. KNOUSE & others[1]

 
 Docket:
 23-P-706
 
 
 Dates:
 October 1, 2024 - January 14, 2025
 
 
 Present:
 Blake, Ditkoff, & D'Angelo, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 "Anti-SLAPP" Statute. Employment, Sexual harassment, Retaliation. Libel and Slander. Unlawful Interference. Anti-Discrimination Law, Sex, Unfair educational practice. Practice, Civil, Motion to dismiss
 
 

             Civil action commenced in the Superior Court Department on October 20, 2021. 
            Special motions to dismiss and motions to dismiss were heard by Hélène Kazanjian, J., and a motion to stay discovery was heard by Peter B. Krupp, J.
            A proceeding for interlocutory review was heard in the Appeals Court by Shin, J.
            Kay H. Hodge (John M. Simon also present) for Ruth Lehmann & another.
            Ellen J. Zucker (Neerja Sharma also present) for Kristin A. Knouse.
            Edward Foye (Lisa G. Arrowood also present) for the plaintiff.
            Christine Walz, of New York, Lisa Kohring, of Florida, Madeline Fenton, of Pennsylvania, & Jamie Alexandra Ehrlich, for Legal Momentum & others, amici curiae, submitted a brief.
            Naomi R. Shatz & Niamh S. Gibbons, for Massachusetts Employment Lawyers Association, amicus curiae, submitted a brief.
            D'ANGELO, J.  This case arises from a workplace sexual harassment investigation.  The plaintiff, David M. Sabatini, ran a laboratory at Whitehead Institute for Biomedical Research (Whitehead or institute).  In 2020, Kristin A. Knouse, who was a fellow at Whitehead, told the institute's director, Ruth Lehmann, that Sabatini had sexually harassed her.  Following Whitehead's investigation into the matter, which culminated in a report finding sexual harassment, Sabatini resigned and brought a complaint alleging that the defendants -- Knouse, Whitehead, and Lehmann -- made false statements about him.  Knouse counterclaimed, generally alleging sexual harassment, retaliation, and related torts as well as that the purpose of Sabatini's complaint was to smear her. 
            Following special motions to dismiss under the anti-SLAPP statute, G. L. c. 231, § 59H, and motions to dismiss for failure to state a claim, the parties appeal from so much of an order (March 30, 2023 order) as denied Knouse's special motion to dismiss; denied in part and allowed in part Whitehead and Lehmann's special motion to dismiss; and dismissed for failure to state a claim (1) Sabatini's claims against Whitehead and Lehmann for defamation and tortious interference (counts II and IV), (2) part of Sabatini's claim against the defendants for violation of G. L. c. 151B (count IX), and (3) Knouse's counterclaim against Sabatini for violation of G. L. c. 214, § 1C (counterclaim I).[2]  With respect to the special motions to dismiss, we conclude that Sabatini's claims have a substantial basis in conduct other than or in addition to protected petitioning activity and that the special motions to dismiss should have been denied in their entireties.  We otherwise conclude that counts II and IV, part of count IX, and counterclaim I were properly dismissed for failure to state a claim.[3]
            Background.  "We summarize the facts as derived from the [complaint and other evidence] before the Superior Court" judge for purposes of reviewing the special motions to dismiss, Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 542 (2024), and assume the facts as alleged in the complaint to be true for purposes of reviewing the motions to dismiss for failure to state a claim, see Calixto v. Coughlin, 481 Mass. 157, 158 (2018).[4]
            Sabatini and Knouse met in 2012.  At the time, Sabatini was a tenured member of the department of biology at the Massachusetts Institute of Technology (MIT) and ran his own laboratory at Whitehead, a research institute affiliated with MIT that receives funding from private resources such as the Howard Hughes Medical Institute (HHMI) and public resources such as the National Institutes of Health (NIH).[5]  Knouse was enrolled in an inter-institutional M.D./Ph.D. program at Harvard and MIT, where Sabatini was one of her instructors and served on her thesis committee.  While Knouse was a doctoral student, she and Sabatini sometimes socialized.  Then, in 2018, Knouse started a fellowship at Whitehead, and she and Sabatini began a sexual relationship.  While the relationship ended in 2019, Knouse sent text messages to Sabatini in January 2020 seeking to rekindle their relationship.  Sabatini responded, asking Knouse to stop and stating that he wanted peace and needed space to figure things out.
            In early 2020 through the fall of 2020, Knouse began telling colleagues, both at Whitehead and MIT, that Sabatini had sexually harassed her.  In October 2020, Knouse reported the alleged sexual harassment to Lehmann.  Around that time, Whitehead hired a consultant to conduct a diversity survey at Whitehead.  During the survey, some Whitehead employees reported concerns about Sabatini.  In response, Whitehead hired the law firm of Hinckley, Allen & Snyder LLP (HAS) to investigate the culture within Sabatini's laboratory.  The HAS investigators spoke with Knouse and other members of the Whitehead community.  In interviews with the HAS investigators, Knouse repeated her allegations that Sabatini had sexually harassed her.  
            On August 13, 2021, HAS sent a report to Whitehead finding that Sabatini had committed sexual harassment.  Whitehead forwarded the report to MIT and HHMI.  On August 19, Whitehead provided Sabatini with a copy of the report.  On August 20, Sabatini resigned after learning that Whitehead was about to terminate his employment.[6]  Also on August 20, Lehmann sent an e-mail message to the Whitehead community stating that Sabatini had violated Whitehead's policies on sexual harassment and was no longer associated with Whitehead.  The message was then circulated and reported in the news.  Thereafter, Whitehead and Lehmann also communicated with scientific journals where Sabatini had articles pending, asking the journals to convey that Sabatini was no longer associated with Whitehead and implying that Sabatini had engaged in misconduct.  
            While not alleged in Sabatini's complaint, it is undisputed for purposes of this appeal that Whitehead also communicated with NIH regarding Sabatini.  On August 24, Whitehead informed NIH that Sabatini no longer worked there.  On August 27, NIH sent Whitehead a letter stating that it had learned of Sabatini's departure from the news and requesting additional information.[7]  Whitehead responded on September 21.  Whitehead's response outlined the events leading to its decision to hire HAS to conduct an investigation; stated that the investigation resulted in a finding of sexual harassment; and outlined the remedial steps that Whitehead had taken in response, including accepting Sabatini's notice of resignation.  
            Discussion.  1.  Anti-SLAPP.  The defendants argue that their alleged conduct -- including Knouse's reports to colleagues, Lehmann, and the HAS investigators that Sabatini had sexually harassed her; Whitehead's investigation of those reports; and the subsequent sharing of the finding that Sabatini had committed sexual harassment -- constituted protected petitioning activity and that all of Sabatini's claims should have been dismissed.  We disagree.
            We review the motion judge's rulings on the defendants' special motions to dismiss de novo, applying the revised framework set forth in Bristol Asphalt, Co., 493 Mass. at 555-560.[8]  At the first stage of the framework, the proponent of the special motion to dismiss "must show that the challenged count has no substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning activity."  Id. at 555-556.  If the proponent cannot make this threshold showing, the special motion to dismiss must be denied and, as here, we need not reach the second stage of the framework.  See id. at 556.  In conducting this analysis, we do not parse the factual allegations underlying each claim to determine whether a portion of the claim could be construed as based on petitioning activity alone.  See id. at 553-554.  Instead, where a claim is based on a mixture of petitioning activity and conduct other than petitioning activity, any defenses related to the petitioning activity are "best addressed in the course of ordinary litigation . . . , not special motions to dismiss."  Id. at 554.
            Petitioning activity broadly includes any written or oral statement submitted to or made in connection with an issue under consideration by a governmental body and "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding."  G. L. c. 231, § 59H.  The statement must be "made to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly" (citation omitted).  Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 149 (2017), overruled on other grounds by Bristol Asphalt, Co. 493 Mass. 555-556.  "The archetypical demonstration of th[e] nexus [between a statement and a government proceeding] involves a party's statement regarding an ongoing governmental proceeding made directly to a governmental body."  Blanchard, supra.  "Failing something this clear cut, courts look to objective indicia of a party's intent to influence a governmental proceeding."  Id.  The statement must be "reasonably geared to reaching [the government]."  Id. at 152.  To determine if statements constitute petitioning, "we consider them in the over-all context in which they are made" (citation omitted).  Id. at 149.
            We first address whether Sabatini's claims against Knouse have a substantial basis in conduct other than petitioning activity.  With one exception, see note 9, infra, Sabatini's claims against Knouse were based on allegations that Knouse falsely accused him of sexual harassment, and the question is whether Knouse's reports of sexual harassment constituted petitioning activity.[9]  Knouse does not point us to any objective indicia suggesting that her reports were "reasonably geared to reaching [the government]," let alone "inten[ded] to influence a governmental proceeding."  Blanchard, 477 Mass. at 149, 152.  Rather, Knouse made her reports in private, first to a select group of colleagues and then to the HAS investigators during a private workplace investigation.[10]  See id. at 152 ("A private statement to a select group of people does not, without more, establish a plausible nexus to a governmental proceeding").  At the time, neither NIH nor any other governmental body was involved in the investigation or otherwise reviewing the matter.[11]  Accordingly, we conclude that Sabatini's claims against Knouse have a substantial basis in conduct other than petitioning activity and that her special motion to dismiss was properly denied.
            We next address Sabatini's claims against Whitehead and Lehmann.  Those claims fall into two general categories, (1) claims based on allegations that Whitehead and Lehmann pursued an unfair and one-sided investigation[12] and (2) claims based on allegations that Whitehead and Lehmann shared the finding that Sabatini had committed sexual harassment without regard for the truth of the matter.[13]  
            Asserting that Whitehead's investigation was "intended to encourage NIH to have a favorable view of Whitehead's compliance with [NIH's] [antiharassment] requirements," Whitehead and Lehmann argue that their entire course of conduct constituted petitioning activity and that all of Sabatini's claims against them should have been dismissed.  In essence, Whitehead and Lehmann argue that their actions or inactions all had a communicative quality directed to NIH.  See Marabello v. Boston Bark Corp., 463 Mass. 394, 399 (2012).  However, Whitehead and Lehmann do not point us to any "objective indicia" showing that to be true.  Blanchard, 477 Mass. at 149. 
            As discussed, NIH was not involved in Whitehead's investigation.  In fact, Whitehead and Lehmann did not inform NIH of the investigation until after it had concluded, at which point Whitehead volunteered the limited information that Sabatini no longer worked there.  While Whitehead subsequently provided additional information, it did so only in response to a direct request from NIH.[14]  Nor have Whitehead or Lehmann shown that their communications to the Whitehead community and other entities -- including MIT, HHMI, and scientific journals -- were "reasonably geared to reaching [NIH]."  Id. at 152.  Rather, in context, those were private communications to individuals and entities that also had an interest in the information.  See id.  In sum, we conclude that Sabatini's claims against Whitehead and Lehmann have a substantial basis in conduct other than or in addition to petitioning activity and that Whitehead and Lehmann's special motion to dismiss should have been denied in its entirety.[15]
            2.  Dismissals for failure to state a claim.  a.  Counts II and IV.  Counts II and IV of Sabatini's complaint asserted claims for defamation and tortious interference against Whitehead and Lehmann.  The motion judge dismissed these claims on the basis that they turned on communications that were conditionally privileged.  We agree.
            "[A communication] will be deemed conditionally privileged if the publisher of the statement and the recipient have a common interest in the subject and the statement is reasonably calculated to further or protect that interest" (quotation and citation omitted).  Downey v. Chutehall Constr. Co., 86 Mass. App. Ct. 660, 666 (2014).  However, a publisher may abuse, and lose, a conditional privilege in a number of ways, including where "(1) there is unnecessary, unreasonable or excessive publication, and the defendant recklessly published the defamatory statements; (2) the defendant published the defamatory statements with knowledge of their falsity or with reckless disregard of the truth; or (3) the defendant acted with actual malice" (quotation and citation omitted).  Sullivan v. Superintendent, Mass. Correctional Inst., Shirley, 101 Mass. App. Ct. 766, 777 (2022).  A defendant who raises conditional privilege as a defense has the burden to establish it.  See Downey, supra at 665.  Where a defendant establishes the privilege, the burden shifts to the plaintiff to show "a trial-worthy issue of an abuse of that privilege."  Id.
            Sabatini alleged that Whitehead and Lehmann defamed him and tortiously interfered with his business relationships by telling others that he had committed sexual harassment.  As alleged, Whitehead and Lehmann made these statements to individuals in the Whitehead community; to affiliated institutions that also employed Sabatini; and to scientific journals that were about to publish articles linking Sabatini to Whitehead.[16]  Whitehead and Lehmann shared with these individuals and entities a "common interest" in Sabatini's fitness to run a laboratory free from sexual harassment, and their statements were "reasonably calculated to further or protect that interest."  Downey, 86 Mass. App. Ct. at 666.  Moreover, Sabatini's allegations, which acknowledge that he had a sexual relationship with Knouse and that Whitehead and Lehmann hired an independent law firm to investigate the matter,[17] amply show that Whitehead and Lehmann had a reason to believe the statements and did not act out of malice or do anything else to abuse and lose the privilege.[18]
            b.  Count IX.  Count IX of Sabatini's complaint asserted a claim for violation of G. L. c. 151B against Knouse, Whitehead, and Lehmann.  The claim included multiple theories:  (1) Knouse's text messages created a hostile working environment, (2) Knouse retaliated when Sabatini asked her to stop, (3) Whitehead and Lehmann aided and abetted Knouse in committing retaliation, and (4) Whitehead and Lehmann committed differential sex discrimination by not disciplining Knouse.[19]  The motion judge dismissed the retaliation and aiding and abetting aspects of the claim, and only those aspects of the claim are before us.  We conclude that they were properly dismissed.
            "In the absence of direct evidence of a retaliatory motive," a plaintiff asserting retaliation must allege facts showing that he engaged in a protected activity, that he suffered an adverse action, and that there was a causal connection between the protected activity and the adverse action.  Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011).  Protected activities are "reasonable acts meant to protest or oppose [harassing conduct]" (quotation and citation omitted).  Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 406 (2016).  To be protected, a communication must "be reasonably read" as raising a complaint that the supervisor or coworker engaged in harassing conduct.  Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 336 (2014).  Cf. Tam v. Federal Mgt. Co., 99 Mass. App. Ct. 41, 52 (2021) (complaints were "too general" to constitute protected conduct under Wage Act).
            Sabatini alleged that he asked Knouse to "[p]lease stop."  Sabatini alleged that he further responded by saying that he wanted "some peace" and needed "space as a friend" to figure things out.  In this context, Sabatini's request that Knouse "[p]lease stop" was too general to reasonably be read as raising a complaint that Knouse had created a hostile working environment.  See Bulwer, 86 Mass. Ct. at 336.  Cf. Tam, 99 Mass. App. Ct. at 52.  Rather, as Sabatini's subsequent messages make plain, the request was for peace and space from a past personal relationship.
            Where Sabatini did not allege facts showing that he engaged in a protected activity, he did not assert a prima facie case for retaliation.  Accordingly, so much of his claim as alleged that Knouse committed retaliation and that Whitehead and Lehmann aided and abetted Knouse in committing retaliation was properly dismissed.
            c.  Counterclaim I.  As noted, Knouse also filed a counterclaim against Sabatini, which asserted that Sabatini violated her right to be free from sexual harassment in the educational context in violation of G. L. c. 214, § 1C.  The motion judge dismissed the counterclaim on the basis that a claim under G. L. c. 214, § 1C, for sexual harassment in the educational context must be brought against the educational institution, itself, not an individual.  We agree.
            General Laws c. 214, § 1C, permits actions enforcing the right to be free from sexual harassment, as defined in G. L. c. 151B (employment context) and G. L. c. 151C (educational context), to be brought in Superior Court.  The substantive law regarding sexual harassment is then set forth in G. L. c. 151B and G. L. c. 151C.  See Morrison v. Northern Essex Community College, 56 Mass. App. Ct. 784, 786 (2002) (violations of G. L. c. 151C are actionable in Superior Court under G. L. c. 214, § 1C).  As pertinent here, G. L. c. 151C makes it unlawful for any "educational institution . . . [t]o sexually harass students in any program or course of study."  G. L. c. 151C, § 2 (g).[20]  Where this language applies only to educational institutions, a claim for violation of G. L. c. 151C that is asserted through G. L. c. 214, § 1C, must be brought against the educational institution.  See Lowery v. Klemm, 446 Mass. 572, 577 (2006) ("the definitions of sexual harassment in G. L. c. 151B and c. 151C . . . limit the reach of" G. L. c. 214, § 1C); Doe v. Fournier, 851 F. Supp. 2d 207, 217 (D. Mass. 2012) (statute "does not permit claims against individuals").
            Conclusion.  We reverse so much of the March 30, 2023 order as allowed in part Whitehead and Lehmann's special motion to dismiss.  In all other respects, we affirm.  The matter is remanded to the Superior Court for further proceedings.[21]
So ordered.
 
footnotes

 
            [1] Ruth Lehmann and Whitehead Institute for Biomedical Research.
            [2] So much of the March 30, 2023 order as denied the special motions to dismiss was appealable pursuant to the doctrine of present execution.  See Fabre v. Walton, 436 Mass. 517, 521-522 (2002).  Sabatini and Knouse also obtained leave from a single justice of this court to appeal from the interlocutory rulings on counts II, IV, and IX, and counterclaim I.  The parties do not appeal from other aspects of the March 30, 2023 order.
            [3] We recognize the amicus brief submitted by Legal Momentum and the National Women's Law Center; and A Better Balance; American Civil Liberties Union of Massachusetts, Inc.; Association for Women in Science; California Women's Law Center; Center for Women's Health and Human Rights, Suffolk University; Congregation of Our Lady of Charity of the Good Shepherd, U.S Provinces; Desiree Alliance; Equal Rights Advocates; Healthy Teen Network; Justice and Joy National Collaborative (formerly National Crittenton); National Advocacy Center of the Sisters of the Good Shepherd; National Association of Social Workers; National Association of Women Lawyers; National Consumers League; National Employment Law Project; National Partnership for Women and Families; Reproaction; SisterReach and SisterReach Illinois; Southwest Women's Law Center; The American Society for Cell Biology; The Women's Law Center of Maryland; Victim Rights Law Center; Women Employed; Women Lawyers On Guard Inc.; Women's Bar Association of the District of Columbia; Women’s Bar Association of Massachusetts; Women's Bar Association of the State of New York; Lawyers Club of San Diego; Collective Power for Reproductive Justice; The American Society for Cell Biology; and National Organization for Women Foundation; and the brief submitted by the Massachusetts Employment Lawyers Association.
            [4] We reserve for later discussion the factual allegations underlying Knouse's counterclaim for violation of G. L. c. 214, § 1C, and assume those allegations to be true for purposes of reviewing Sabatini's motion to dismiss.
            [5] As pertinent here, Whitehead and HHMI have a relationship whereby HHMI provides funding for, and in some instances employs, individuals working at Whitehead.  At all relevant times, both Whitehead and HHMI employed Sabatini.  In addition, NIH provided grants that funded Sabatini's research at Whitehead.  
            [6] Before Sabatini resigned, his coemployer at Whitehead, HHMI, see note 5, supra, terminated his employment.  MIT placed Sabatini on leave.  
            [7] By then, Whitehead asserts that it had already informed NIH of Sabatini's departure, so it is unclear why NIH stated that it learned of Sabatini's departure from the news.
            [8] The Supreme Judicial Court decided Bristol Asphalt, Co., after the motion judge ruled on the special motions in this case.  However, the Supreme Judicial Court has stated that the revised framework is "applicable to cases in which a[] [special motion to dismiss] or appeal remain[ed] pending" as of the date of the issuance of the rescript in Bristol Asphalt, Co.  Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 578 (2024).
            [9] Sabatini asserted that Knouse's reports of sexual harassment were defamatory, interfered with his business relationships, inflicted emotional distress, and were retaliatory in violation of G. L. c. 151B.  Sabatini also asserted that Knouse's text messages created a hostile working environment in violation of G. L. c. 151B.  Knouse does not explain how Sabatini's claim for a hostile working environment is based on petitioning activity, and we do not address the claim further.
            [10] Knouse relies on Berk v. Kronlund, 102 Mass. App. Ct. 710, 715 (2023), arguing that Berk stands for the proposition that petitioning activity can include a communication made to a private entity if the private entity, by law, must notify a governmental body of the communication.  However, Knouse does not cite any authority for the proposition that anyone here, by law, had to notify a governmental body of her reports of sexual harassment.  The defendants all assert that Whitehead had to notify NIH, but they provide no support for that assertion.  In fact, while a law now requires institutions that receive NIH funding to notify NIH when "individuals identified as a principal investigator or as key personnel in an NIH notice of award are removed from their position or are otherwise disciplined due to concerns about harassment," that law did not go into effect until 2022.  42 U.S.C. § 283a-4.
            [11] Knouse argues that if Whitehead did not take action, she "intended to file claims and report to NIH."  However, the fact that Knouse may have intended to initiate some form of governmental review does not mean that any statements made in a private setting before she did so constituted petitioning activity.  See, e.g., Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 243 (2008) (anti-SLAPP statute did not provide protection for demand letter sent in anticipation of litigation).
            [12] Sabatini asserted a breach of contract claim against Whitehead alleging that Whitehead did not apprise Sabatini of the charges against him and otherwise did not afford Sabatini due process, in violation of his contract.  Sabatini also asserted a claim for violation of G. L. c. 151B against Whitehead and Lehmann alleging they ignored Knouse's text messages, thereby committing differential sex discrimination and aiding and abetting Knouse in committing retaliation.
            [13] Based on these allegations, Sabatini asserted claims for defamation and tortious interference with business relationships.
            [14] The motion judge ruled that Whitehead's direct communications to NIH constituted petitioning activity and dismissed the portions of Sabatini's complaint based on those communications.  The motion judge did so in reliance on Blanchard, 477 Mass. at 155, which required judges to parse the allegations of a claim so as to allow any portion of a claim based on petitioning activity to be dismissed.  Since then, the Supreme Judicial Court has overruled the requirement that judges parse the allegations of a claim in connection with a special motion to dismiss.  See Bristol Asphalt Co., 493 Mass. at 553-554.  Now, so long as a claim has a "substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning activity," the whole claim stands.  Id. at 555-556.  Where we conclude that Sabatini's claims against Whitehead and Lehmann have a substantial basis in conduct other than or in addition to petitioning activity, we need not separately address Whitehead's direct communications to NIH.
            [15] After the motion judge denied the defendants' special motions to dismiss, another judge issued a discovery order permitting discovery to proceed.  The defendants filed notices of appeal from that order.  The defendants argue that they have a right to appeal from the discovery order pursuant to the doctrine of present execution and that discovery should have been stayed pending their appeals from the denials of the special motions to dismiss.  Sabatini argues that the doctrine of present execution is inapplicable to the discovery order and that, regardless, it was within the judge's discretion to permit discovery to proceed.  Given our conclusion that the special motions to dismiss should have been denied in their entireties, we do not reach these issues.
            [16] In addition to the general communications described in our background section, Sabatini relies on allegations that Lehmann and the chair of the Whitehead board of trustees made statements at a Whitehead retreat implying that Sabatini had committed sexual harassment and that another member of the board of trustees told an MIT faculty member that Sabatini was a "sexual predator."
            [17] Sabatini argues that the investigation was not independent, and he directs us to factual allegations asserting that he was not afforded due process and that some interviewees reported to Lehmann that they felt pressured to report negative information about Sabatini.  However, this is a case where Whitehead and Lehmann received conflicting information from different sources.  The fact that some interviewees voiced concerns regarding the investigation does not mean that Whitehead and Lehmann had "no reason to believe" that Sabatini committed sexual harassment in light of the other information available to them.  Bratt v. International Business Machs. Corp., 392 Mass. 508, 514 (1984), quoting Sheehan v. Tobin, 326 Mass. 185, 192 (1950).
            [18] We are unpersuaded by Sabatini's arguments that whether a conditional privilege applied could not have been decided at the motion to dismiss stage.  See, e.g., McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 235-236 (1984) (addressing conditional privilege at motion to dismiss stage).  Where the allegations of the complaint establish a privilege, dismissal is proper.  See Sullivan, 101 Mass. App. Ct. at 777-779.
            [19] As alleged, Sabatini shared the text messages with Whitehead during its investigation, but Whitehead and Lehmann did not discipline Knouse for sending them.  
            [20] "The term 'sexual harassment' means any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when: -- (I) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment."  G. L. c. 151C, § 1 (e).
            [21] The defendants' requests for attorney's fees are denied.